**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
Décor Holdings, Inc., *et al.*[1,]                  :    Case No.:  19-71020 (REG)
                                                    :    Case No.:  19-71022 (REG)
                                                    :    Case No.:  19-71023 (REG)
              Post-Confirmation Debtors.            :    Case No.:  19-71024 (REG)
                                                    :    Case No.:  19-71025 (REG)
                                                    :
                                                    :    Substantively Consolidated
                                                    :
---------------------------------------------------------------x
WELLS FARGO BANK, NATIONAL                          :
ASSOCIATION, AS AGENT FOR ITSELF AND                :
PNC BANK, NATIONAL ASSOCIATION                      :
                                                    :
              Plaintiff,                            :    Adv. Case No. __-_____
                                                    :
       - against -                                  :
                                                    :
RADG HOLDINGS, LLC,                                 :
                                                    :
              Defendant.                            :
                                                    :
---------------------------------------------------------------x

## COMPLAINT

Wells Fargo Bank, National Association ("Wells Fargo"), as Agent for itself and PNC Bank, National Association (the "Lenders"), by and through its counsel, hereby files this Complaint against RADG Holdings, LLC ("RADG") and alleges, on knowledge as to its own status and actions and otherwise upon information and belief, as follows:

---

[1] The post-confirmation Debtors (the "Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); RAD Liquidation Inc. (f/k/a The Robert Allen Duralee Group, Inc.) (8435); RAD Liquidation LLC (f/k/a The Robert Allen Duralee Group, LLC) (1798); and RADF LLC (f/k/a The Robert Allen Duralee Group Furniture, LLC) (2835).

## NATURE OF THE ACTION

1. This is an action by Wells Fargo, as Agent on behalf of the Lenders, to recover against RADG in the amount of not less than $2,258,238.26 owing from RADG representing a "make whole" payment that is outstanding, has been demanded, and has not been paid, in contravention of RADG's contractual obligations under, *inter alia*, the Asset Purchase Agreement ("APA") among the Debtors and RADG dated as of April 12, 2019 approved by this Court (the "Bankruptcy Court") on May 6, 2019 [Dkt. No. 303-1].

## THE PARTIES

2. Plaintiff Wells Fargo is a national banking association with offices within the State of New York, and has been in the business of, among other things, commercial financing.

3. Defendant RADG is a limited liability company registered under the laws of the State of Delaware with a registered address c/o the Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801 and a principal place of business located at 312 S. Gay Street, Knoxville, Tennessee 37902.  By virtue of its Bankruptcy Court-approved purchase of substantially all of the assets of the Debtors, previously headquartered in Hauppauge, New York, as more fully described below, RADG is subject to the jurisdiction of this Bankruptcy Court.

## JURISDICTION AND VENUE

4. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

5. Further, pursuant to Section 63(f) of the Findings of Fact, Conclusions of Law and Order (I) Confirming Third Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors and (II) Approving the Sale of Substantially All of the Debtors' Assets entered by the

Bankruptcy Court on May 6, 2019 in the above-captioned Debtors' Chapter 11 case pending in the Bankruptcy Court in the Eastern District of New York (Case No. 8-19-71020 (REG)) [Dkt. No. 303] (the "Confirmation Order"), the Bankruptcy Court specifically retained jurisdiction to "resolve any dispute arising under or related to … (ii) the Sale of Assets, APA, and the TSA, including without limitation the right to collect the Purchase Price and any Receivables under the APA and TSA."

6. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including pursuant to § 157(b)(2)(A). Wells Fargo consents to the entry of final orders or judgment by the Bankruptcy Court in this adversary proceeding.

7. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. Pursuant to Section 12.10 of the APA, for so long as the Debtors are subject to the jurisdiction of the Bankruptcy Court, the parties to the APA, including RADG, "irrevocably elect[ed] as the sole judicial forum for the adjudication of any matters arising under or in connection with [the APA], and consent[ed] to the jurisdiction of, the Bankruptcy Court."

9. Pursuant to Section 25 of the Security Agreement dated as of May 3, 2019 between Wells Fargo and RADG (the "Security Agreement"), RADG agreed, *inter alia*, that all actions and proceedings arising in connection with the Security Agreement shall be tried and litigated only in New York State and to irrevocably and unconditionally submit to the exclusive jurisdiction of the State and Federal courts located in the County of New York and the State of New York in any action or proceeding arising out of or relating to the Security Agreement.

## FACTUAL BACKGROUND

The Debtors' Bankruptcy Case

10. On February 12, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the Bankruptcy Court.

11. On April 11, 2019, the Bankruptcy Court entered an order substantively consolidating the Debtors' bankruptcy estates [Dkt. No. 230].

The Lenders' Financing of the Debtors

12. Prior to the Petition Date, the Lenders made loans, advances, and provided other financial accommodations to the Debtors.

13. Postpetition, the Lenders provided financing to the Debtors pursuant to the terms of not less than six Orders entered by the Bankruptcy Court, culminating in the Final Order pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors In Possession to Obtain Post Petition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay; and (VI) Granting Related Relief entered on May 6, 2019 [Dkt. No. 306] (the "Final Financing Order").

The Confirmation Hearing and Order

14. On April 16, 2019, the Debtors filed a Disclosure Statement and Second Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors [Dkt. No. 241] (the "Disclosure Statement") which was premised upon the Bankruptcy Court's approval of a sale of substantially all of the Debtors' assets to RADG pursuant to the APA (the "Sale").

15. The liquidation analysis annexed to the Disclosure Statement [Dkt. No. 241-2] (the "Liquidation Analysis") calculated the Debtors' accounts receivable as of the week ended May 4, 2019 in the amount of approximately $13.065 million.

16. On May 2, 2019, the Bankruptcy Court held a hearing (the "Confirmation Hearing") on, *inter alia*, the Debtors' confirmation, including the Sale, and the request for entry of the Final Financing Order.

17. At the Confirmation Hearing, the Bankruptcy Court heard testimony from the Debtors' Chief Restructuring Officer, Timothy R. Boates, which reinforced the calculation of the Purchase Price (as defined in the APA) under the APA.

18. Representatives of RADG attended the Confirmation Hearing.

19. RADG did not raise any objection to the receivables calculation contained in the Liquidation Analysis or to the calculation of the Purchase Price at any time.

20. On May 3, 2019, the Debtors filed a Third Amended Joint Chapter 11 Plan of Liquidation Proposed by the Debtors [Dkt. No. 296].

21. On May 6, 2019, the Bankruptcy Court entered the Confirmation Order.

22. The Confirmation Order, *inter alia*, approved the APA annexed thereto as Exhibit 1.

The APA

23. The APA was thoroughly negotiated by RADG and the Debtors, necessitating not less than thirteen (13) drafts.

24. Under Section 2.2 of the APA, RADG agreed to purchase substantially all of the Debtors' assets for a purchase price of up to $19 million comprised of: (i) a cash payment at Closing (defined in Section 9.1 as being held no later than three (3) business days after entry of

the Confirmation Order) of $8,000,000.00, plus (ii) an amount in cash payable after the Closing on account of the Debtors' receivables (as more fully defined in the APA, the "Receivables") of not less than $10,000,000.00 and not more than $11,000,000.00 (the "Receivables Purchase Price"), subject to adjustment prior to Closing pursuant to Sections 2.4 and 2.7 of the APA.

25. Under Section 2.2(b) of the APA, the Receivables Purchase Price was to be paid to the Debtors, on a daily basis out of the first $11,000,000.00 of Receivables collected by RADG by remitting such collections and proceeds of the Receivables to the "Collateral Account" (as defined in the APA), less any approved out-of-pocket costs of collection.

26. Section 2.2(b) of the APA further provides, in relevant part:

> At the election of the DIP Lenders, in their sole and absolute discretion, on the date that is the six (6) month anniversary of the Closing Date (the "**Make-Whole Date**"), [RADG] shall pay the [Debtors] (by remitting such amount to the "Collateral Account") an amount (the "**Make Whole Amount**") equal to the difference, if any, between (x) $10,000,000.00 (the amount guaranteed to the [Debtors]) and (y) the total amount previously paid to the [Debtors] after the Closing Date and prior to the Make-Whole Date in respect of the Receivables Purchase Price from the Receivables included in the Purchased Assets.  The DIP Lenders shall provide the Purchaser with written notice at least thirty (30) days prior to the Make-Whole Date in the event that they elect that [RADG] pay the Make Whole Amount. … Notwithstanding the foregoing, in the event that the amount of net Receivables included in the Purchased Assets is less than $11,000,000.00, the amount guaranteed to the [Debtors] by [RADG] shall be reduced on a dollar for dollar basis; provided that in no event shall duplicative adjustments be made pursuant to this Agreement.

APA § 2.2(b) (emphasis in original).

27. Under the express terms of Section 12.13 of the APA, the "DIP Lenders" (*i.e.*, the Lenders) are third party beneficiaries of the APA.

The Sale Closing

28. The Closing of the Sale was deemed to have occurred on May 3, 2019.

29. The net Receivables purchased at Closing by RADG, including the receivables of the Debtors' non-Debtor Canadian subsidiary acquired by RADG, totaled $10,760,251.56.

30. In view of the fact that the net Receivables purchased by RADG at Closing were less than $11,000,000.00 (*i.e.*, $10,760,251.56), the amount of $10,000,000.00 guaranteed to be paid by RADG on account of the Receivables Purchase Price pursuant to Section 2.2(b) of the APA was reduced dollar for dollar to $9,760,251.56.

The Security Agreement

31. Contemporaneously with the Bankruptcy Court's approval of the APA, Wells Fargo, as Agent for the Lenders, and RADG executed the Security Agreement, which, *inter alia*, contractually requires RADG to pay Wells Fargo, as Agent, a guaranteed amount of not less than $10 million on account of the Receivables, subject only to adjustments set forth in Section 2.4 of the APA.

32. Pursuant to the Security Agreement, to induce the Lenders to consent to the Sale under the APA, RADG agreed to grant Wells Fargo, as Agent for the benefit of the Lenders, a continuing and a priority security interest in and to certain collateral, including the Receivables, to secure the prompt and complete payment, and observance and performance of, among other things, the "Secured Obligations" under the Security Agreement.

33. The "Secured Obligations" are defined in Section 2(a) of the Security Agreement as RADG's obligation, to the extent that the amount of collections from the Receivables that has been remitted to the Collateral Account after the date of Closing and prior to the Make-Whole Date is less than $10,000,000.00, to "immediately" remit to Wells Fargo, in cash on the Make-Whole Date, without offset, counter-claim or defense,imagethe amount equal to the difference between $10,000,000.00 and the amount of collections from the Receivables actually remitted to

the Collateral Account in the event that the Lenders elected to require RADG to pay the Make Whole Amount pursuant to Section 2.2(b) of the APA.

34. In furtherance of the priority security interests created and Secured Obligations required to be satisfied thereunder, the Security Agreement, *inter alia*, requires RADG to cooperate with the Debtors and the Lenders in verifying the validity, amount or any other matter relating to any Receivable and memorializes the Lenders' cumulative and concurrent rights, powers, and remedies under the Agreement and as secured parties under the New York Uniform Commercial Code or any other applicable law.

35. The Security Agreement (at Section 20) also requires RADG to indemnify Agent and each Lender "from and against all claims, lawsuits and liabilities (including reasonable attorneys' fees) arising out of or resulting from this Agreement (including enforcement of this Agreement)," which indemnification provision expressly survives the termination of any of the foregoing agreements and the repayment of the Secured Obligations.

Intercreditor Agreement

36. In connection with the foregoing agreements, Wells Fargo, as Agent, entered into an Amended and Restated Intercreditor and Allocation Agreement dated as of July 25, 2019 with certain of RADG's creditors party thereto (the "RADG Creditors") which expressly makes clear (at Section 1(c)) that unless and until Wells Fargo receives the Receivables Purchase Price or the Make Whole Amount, Wells Fargo's security interests and liens in and upon the "Existing Creditor Collateral" (including the Receivables) shall have priority over the security interests and liens of the RADG Creditors in or upon such collateral and that the interests and liens of the RADG Creditors in or upon such collateral shall be junior in priority to the security interests and liens of Wells Fargo in or upon such collateral.

<u>The Make-Whole Demand and RADG's Noncompliance Therewith</u>

37. In accordance with Section 2.2(b) of the APA, on October 2, 2019—more than thirty (30) days prior to the Make-Whole Date—Wells Fargo, on behalf of the Lenders, provided RADG with written notice of the Lenders' election, in their sole and absolute discretion, that RADG pay by the Make-Whole Date the Make Whole Amount, which the Lenders then-calculated to be in the amount of $2,270,287.86 based on the amount collected through September 30, 2019.

38. Pursuant to a request made by RADG, on October 8, 2019, Wells Fargo provided back-up information supporting the Make Whole Amount.

39. By letter dated October 25, 2019, RADG disputed the Make Whole Amount and refused to remit payment, wrongly asserting that *RADG* was in fact owed $1,193,063.00.

40. Despite Wells Fargo's subsequent provision of additional information disputing and correcting RADG's calculations and providing an updated calculation of the amount owing, RADG has refused to remit payment of the Make Whole Amount.

41. As of the filing of this Complaint, the amount owing from RADG to the Lenders on account of the Make Whole Amount is not less than $2,258,238.26.

## **AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract (APA))**

42. Wells Fargo repeats and realleges each of the allegations in paragraphs 1 through 41 as if fully set forth herein.

43. RADG and the Debtors are parties to the APA, to which the Lenders are express third party beneficiaries.

44. The Debtors performed their obligations under the APA by consummating the Sale pursuant to the terms of the APA.

45. Despite receipt of proper written notice from Wells Fargo of the Lenders' election, in their sole and absolute discretion, that RADG pay the Make Whole Amount under Section 2.2(b), RADG materially breached the APA by, *inter alia*, failing to pay the Make Whole Amount by the Make-Whole Date, in contravention of Section 2.2(b) of the APA.

46. The amount required to be paid by RADG under Section 2.2(b) of the APA remains outstanding and unpaid.

47. By reason of the foregoing, RADG breached its contractual obligations to the Lenders, as express third party beneficiaries of the APA, and is liable to Wells Fargo, as Agent on behalf of the Lenders, for damages suffered by the Lenders in an amount to be proven at trial but not less than $2,258,238.26, plus interest and costs.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Breach of Contract (Security Agreement))**

48. Wells Fargo repeats and realleges each of the allegations in paragraphs 1 through 47 as if fully set forth herein.

49. RADG and Wells Fargo, as Agent, are parties to the Security Agreement.

50. Wells Fargo has performed its obligations under the Security Agreement.

51. Despite (i) receipt of proper written notice from Wells Fargo of the Lenders' election, in their sole and absolute discretion, that RADG pay the Make Whole Amount under Section 2.2(b) the APA and (ii) the fact that the amount of collections from the Receivables that had been remitted to the Collateral Account prior to the Make-Whole Date was less than $10,000,000.00, RADG materially breached the Security Agreement by, *inter alia*, failing to immediately remit to Wells Fargo in cash on the Make-Whole Date the difference between $10,000,000.00 and the amount of collections from the Receivables remitted to the Collateral

Account after the date of Closing and prior to the Make-Whole Date, in contravention of Section 2(a) of the Security Agreement.

52. The amount required to be paid by RADG under Section 2(a) of the Security Agreement remains outstanding and unpaid.

53. By reason of the foregoing, RADG breached its contractual obligations to Wells Fargo under the Security Agreement, and is liable to Wells Fargo, as Agent on behalf of the Lenders, for damages suffered by the Lenders in an amount to be proven at trial but not less than $2,258,238.26, plus interest and costs.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Contractual Indemnification)**

54. Wells Fargo repeats and realleges each of the allegations in paragraphs 1 through 53 as if fully set forth herein.

55. RADG and Wells Fargo, as Agent, are parties to the Security Agreement.

56. Wells Fargo has performed its obligations under the Security Agreement.

57. The Security Agreement obligates RADG to indemnify the Agent and the other Lenders from and against all claims, lawsuits and liabilities (including reasonable attorneys' fees) arising out of or resulting from the Security Agreement (including the enforcement of the Security Agreement).

58. The Lenders have incurred, and are continuing to incur, amounts arising out of and resulting from their enforcement of the Security Agreement.

59. By reason of the foregoing, RADG is liable to Wells Fargo, as Agent on behalf of the Lenders, for reasonable attorneys' fees incurred arising out of and resulting from their enforcement of the Security Agreement in an amount to be proven at trial, plus interest and costs.

WHEREFORE, Wells Fargo demands judgment against RADG as follows:

(a) On the First Cause of Action in the amount of not less than $2,258,238.26, plus interest accrued and accruing;

(b) On the Second Cause of Action in the amount of not less than $2,258,238.26, plus interest accrued and accruing;

(c) On the Third Cause of Action in an amount to be proven at trial, plus interest accrued and accruing; and

(d) the costs and disbursements of this action and such other and further relief as the Court deems just and proper.

Dated:  November 25, 2019

          OTTERBOURG P.C.

          */s/ Jonathan N. Helfat*
          Jonathan N. Helfat
          Pauline McTernan
          230 Park Avenue
          New York, New York 10169
          Telephone:   (212) 661-9100
          Facsimile:    (212) 682-6104
          E-mail:       jhelfat@otterbourg.com
                            pmcternan@otterbourg.com

          *Counsel to Wells Fargo Bank, National Association, as Agent for itself and PNC Bank, National Association*